# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-111-FDW

| | |
|---|---|
| GIVONNO CARTER, ) | |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| FNU TAPP, et al., ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of the Complaint, (Doc. No. 1), and on consideration of *pro se* Plaintiff's Motions for Preliminary Injunction, (Doc. Nos. 7, 8). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 5).

## I. BACKGROUND

*Pro se* incarcerated Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983 naming as Defendants the following Marion Correctional Institution employees: Assistant Unit Manager FNU Tapp, Sergeant FNU Ingram, Sergeant FNU Morgan, and Officer FNU Hensley.[1]

Construing the Complaint liberally and accepting the allegations as true, Defendants took Plaintiff's personal property (a radio and headphones) without a disciplinary hearing on January 14, 2019. Plaintiff claims that "they had no reason to take my radio and headphones that had nothing to do with anything." (Doc. No. 1 at 3). Officials did not let Plaintiff use the television on March 4, 2019 to March 22, 2019, in violation of RDU program policy and Plaintiff's "constitutional immunity." (Doc. No. 1 at 4). Plaintiff was not allowed television, radio, phone,

---

[1] Plaintiff filed another § 1983 lawsuit addressing the conditions of his confinement at Marion C.I., case number 1:18-cv-275-FDW, which is still pending.

1

newspaper, or "access to the press" or current events from January 14 to March 22, 2019, which violation his "1st Amendment prohibition to the press." (Doc. No. 1 at 4). Defendants said that Plaintiff violated "a Prog. Matrix/Rule" and punished him twice for old write-ups which was double punishment in violation of the Fifth Amendment. (Doc. No. 1 at 4). Plaintiff claims that the foregoing is cruel and unusual punishment in violation of the Eighth Amendment. (Doc. No. 1 at 4).

As relief, Plaintiff seeks $50,000, injunctive relief, Defendants' prosecutions for felonies including obstruction of justice and larceny.

## II. PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A preliminary injunction is a remedy that is "'granted only sparingly and in limited circumstances.'" Micro Strategy, Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). To obtain a preliminary injunction, a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. DiBiase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (quoting Winter, 555 U.S. at 20). It is well established that "absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994); see Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) ("judicial restraint is especially called for in dealing with the complex and intractable problems of prison

administration.").

Plaintiff seeks transfer to another facility because his rights keep getting violated every day including defamation, malfeasance, disturbing the peace, cruel and unusual punishment, no due process regarding discipline and classification. Plaintiff claims that he keeps getting fake write-ups that result in privileges being taken away and that he is experiencing intentionally harmful interference with mail, visitation and communication. The write-ups stopped his progress through the RDU program. Officials are always giving him a problem, they do not tell him when he is supposed to go to the next phases and re-set his release/progress dates for no reason, they are giving him the wrong classification assignment, and they are not letting him get out of the program.

They took his radio again, Plaintiff is not receiving newspapers, he is being denied access to the press, and is being subjected to illegal search and seizure. Plaintiff is also not receiving due process in disciplinary proceedings. Plaintiff did not get to take a shower on May 15, 2019 because officials said he was acting out of control and threatening staff which is a lie. It is also a lie that Plaintiff had his window covered and refused to uncover it. Plaintiff is receiving cell restrictions and losing privileges. He was denied canteen on May 13, and 17, 2019. Plaintiff's PREA grievances are being ignored. PREA Staff Mr. Irving reported that Cordosi was not allowed to be in Plaintiff's block or touch Plaintiff but Cordosi violated this between March 4 and May 7, 2019. Officer Marsh is calling Plaintiff names and Plaintiff had to put a PREA grievance on him. Marsh has shouted that Plaintiff is in protective custody which is supposed to be confidential.

Now Plaintiff is in protective custody as a non-participant in RDU when he is not in the RDU program anymore. Plaintiff is being defamed and made to look like a bad person and gang member associate terrorist which is not true. They are disturbing his peace which is a criminal offense and constitutional violation. Plaintiff has not been able to go to school, work time off his

3

sentence, or get normal privileges and is being tortured. Plaintiff believes that the Caucasian officials are being racist and discriminating against him and oppressing him for no reason. Plaintiff is not safe at the prison and is at risk of irreparable harm. Plaintiff seeks transfer to another prison as soon as possible.

Plaintiff has failed to establish that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary relief. Therefore, his Motions seeking preliminary injunctive relief will be denied.

### III. SCREENING STANDARD

"Section 1983 imposes liability on state actors who cause the deprivation of any rights, privileges or immunities secured by the Constitution." Loftus v. Bobzien, 848 F.3d 278, 284 (4th Cir. 2017) (quoting Doe v. Rosa, 795 F.3d 429, 436 (4th Cir. 2015)). To state a claim under § 1983, a plaintiff must allege that the defendant, acting under the color of law, violated his federal constitutional or statutory rights and thereby caused injury. Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011).

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears

4

certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### IV. DISCUSSION

**(1) <u>Conditions of Confinement</u>**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761

(4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that he is being denied privileges such as access to the phone, television, radio, newspaper, and, on two occasions, access to canteen.

Plaintiff's allegations do not constitute a sufficiently serious and extreme deprivation of the minimum civilized measure of life's necessities as contemplated by the Eighth Amendment. See Mines v. Barber, 610 Fed. Appx. 838 (11th Cir. 2015) (affirming the dismissal of plaintiff's Eighth Amendment claim that he was deprived of property during a prison administrative search where he did not allege that the seizure caused him physical pain or created an unreasonable risk to his health or safety); Thomas v. New Mexico Corr. Dep't, 272 Fed. Appx. 727 (10th Cir. 2008) (prisoner's allegation that he was deprived of personal belongings does not rise to the level of an Eighth Amendment violation); Macon v. Rogers, 2006 WL 6198461 (E.D. Va. Sept. 21, 2006)

(prisoner's inability to obtain certain food and other items from prison commissary or order them from another vendor did not violate the Eighth Amendment); Prophete v. Gilless, 869 F.Supp. 537 (W.D. Tenn. Nov. 15, 1994) (dismissing as frivolous prisoner's Eighth Amendment claim that food was being served cold and ran the risk of being contaminated); Stephenson v. Diggs, 2015 WL 9450611 (E.D. Va. Dec. 22, 2015) (dismissing for failure to state a claim prisoner's Eighth Amendment claim that having lights on 24 hours per day in solitary confinement adversely affected his sleep patterns). Therefore, Plaintiff's claims of cruel and unusual conditions of confinement are insufficient to proceed and will be dismissed.

**(2)** **Free Speech**

The First Amendment states that "Congress shall make no law … abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). Prison officials may impose restrictions on prisoners' rights if those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In making this determination, a court considers the following factors: (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the inmate has an alternative means of exercising the constitutional rights; (3) the impact accommodating the inmate's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist. Turner, 482 U.S. at 89, 99. When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central

7

objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)); see Beard v. Banks, 548 U.S. 521 (2006) (applying the deferential Turner standard to prisoner cases involving First Amendment restrictions). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547 (citations omitted).

Plaintiff claims that Defendants are intentionally depriving him of access to the phone, newspaper, and "the press" in violation of the First Amendment. These vague, conclusory, and general allegations fail to state a plausible First Amendment violation. See generally Veney, 293 F.3d at 730 (although the court is required to accept "all well-pleaded allegations in the plaintiff's complaint as true," it is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," or that "contradict matters properly subject to judicial notice or by exhibit…."). Moreover, to the extent that Plaintiff alleges that these deprivations resulted from disciplinary actions against him, such claims are not redressable in the courts. See generally Edwards v. Balisok, 520 U.S. 641 (1997) (claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983). Therefore, this claim will be dismissed.

**(3)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected

8

interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(A)** **Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff alleges that he was deprived of property for no reason. This appears to be a claim of a random and unauthorized deprivation, which is redressable under North Carolina law.

Therefore, this claim will be dismissed.

**(B)** **Disciplinary Proceedings**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence

in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. However, a claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983. Edwards, 520 U.S. at 641.

Plaintiff's conclusory allegation that there is "[n]o due process in disciplinary proceedings" is too vague and conclusory to support relief. (Doc. No. 1 at 4); see Veney, 293 F.3d at 730 (although the court is required to accept "all well-pleaded allegations in the plaintiff's complaint as true," it is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," or that "contradict matters properly subject to judicial notice or by exhibit…."). Petitioner's claim that the disciplinary proceedings violated double jeopardy is too vague and conclusory to support relief, and also fails because the Double Jeopardy Clause does not apply to prison disciplinary proceedings. See Wolff, 418 U.S. at 556 ("a prison disciplinary proceeding is no bar to a subsequent criminal prosecution for the same offense"); Meeks v. McBride, 81 F.3d 717, 722 (7th Cir. 1996) ("an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge."); Morganherring v. Lafleur, 2019 WL 2251565 (E.D.N.C. April 12, 2019) (dismissing prisoner double jeopardy claim that prison officials punished him for disciplinary infractions and altered his custody classification). Accordingly, these claims will be dismissed without prejudice.

**(4)** **Policy Violations**

"[P]rison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation." Jackson v. Sampson, 536 Fed. Appx. 356, 357 (4th Cir. 2013) (unpublished).

11

Plaintiff appears to allege that several of Defendants' actions with regards to the conditions of confinement and alleged deprivations of property and disciplinary proceedings violated DPS and/or RDU policy. However, a violation of policy, standing alone, is not sufficient to state a § 1938 claim. Plaintiff has failed to adequately allege any constitutional violation; therefore, Defendants' alleged failure to follow policy is also inadequate to proceed. This claim will therefore be dismissed.

## VI. CONCLUSION

For the reasons stated herein, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's pending Motions are denied, and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Plaintiff's Motions for Preliminary Injunction, (Doc. Nos. 7, 8), are **DENIED**.

3. The Clerk of Court is instructed to close this case.

Signed: November 14, 2019

Frank D. Whitney
Chief United States District Judge